UNITED STATES of America, Appellee,

v.

Ira W. DAMON, III, Defendant,
Appellant.

No. 97–1032.

United States Court of Appeals,
First Circuit.

Heard Aug. 1, 1997.

Decided Oct. 6, 1997.

F. Mark Terison, Assistant U.S. Attorney, with whom Jay P. McCloskey, United States Attorney, and James Moore, Assistant U.S. Attorney, were on brief, for appellee.

Jeffrey Silverstein, with whom Billings & Silverstein was on brief, for defendant, appellant.

Before LYNCH, Circuit Judge, HILL * and GIBSON,** Senior Circuit Judges.

LYNCH, Circuit Judge.

Under the U.S. Sentencing Guidelines, punishment for an offense is, at times, increased when the defendant was previously convicted of unrelated crimes. This case presents serious issues of both substance and procedure in this "enhancement" process. The substantive issue is whether the crime of aggravated criminal mischief under state law is categorically a "crime of violence" under U.S.S.G. § 4B1.2(1), thus warranting an increase in sentence. The outcome of the substantive question is determined by resolution of the procedural issue. The procedural issue concerns when a trial court may look beyond the statutory offense and focus on the actual prior criminal conduct in the face of the Supreme Court's admonitions that federal sentencing courts should prefer a categorical approach over an examination of the actual facts of the prior crime. At stake for defendant Damon, an experienced felon caught possessing several firearms, is whether his sentence should be roughly two years shorter than the 84 months he received.

We hold, under Supreme Court precedent, that it was error for the district court to look beyond the categorical nature of the crime, which was revealed in the state charging document. Thus the district court here could not inquire further to discover the reality of the defendant's prior crime as revealed in the Presentence Investigative Report: that the defendant attempted to set fire to his house to collect insurance. Such acts certainly would be a crime of violence, if that information could properly have been considered by the district court. Nevertheless, the decision of the Supreme Court in *Taylor v. United States,* 495 U.S. 575, 600–02, 110 S.Ct. 2143, 2159–60, 109 L.Ed.2d 607 (1990), and the decisions of the U.S. Sentencing Commission embodied in amendments to § 4B1.2(1) preclude this inquiry.

I. Background

Ira Damon was stopped while driving his car on February 28, 1996 by officer Brent Beaulieu of the Newport, Maine police. Beaulieu patted-down Damon and found pistol and shotgun ammunition in Damon's pockets. Damon's car held a shotgun, a pistol, two rifles, and a loaded clip of pistol ammunition.

Damon pled guilty to the federal charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On December 6, 1996 the district court sentenced Damon, inter alia, to 84 months in prison.

Damon has been afoul of the law before. We go through the sentencing calculations

---

* Hon. James C. Hill of the Eleventh Circuit, sitting by designation.

** Hon. John R. Gibson of the Eighth Circuit, sitting by designation.

that resulted from this history of illicit activity. Damon's unauthorized use of a motor vehicle gained him one criminal history point, and his crimes of negotiating several worthless instruments added three more points. Damon's convictions for assault on an officer, aggravated criminal mischief, criminal threatening, and operating a motor vehicle as an habitual offender added two more points each. It is the aggravated criminal mischief conviction which raises the serious issue in this appeal.

Because Damon was under a "criminal justice sentence" at the time of the offense, the federal sentencing judge added two criminal history points under U.S.S.G. § 4A1.1. Damon's score of fourteen criminal history points placed him in Criminal History Category VI of the Federal Sentencing Guidelines.

The sentencing court determined that the offense level for Damon's crime was twenty-two, by setting the base offense level at twenty under U.S.S.G. § 2K2.1(a)(4)(A), and adding two levels pursuant to U.S.S.G. § 2K2.1(b)(4) because the serial numbers on the Colt .45 pistol found in Damon's car were obliterated. The sentencing range for a category VI offender who commits a level twenty-two offense is 84 to 105 months of imprisonment.

In this appeal, Damon primarily argues that his prior conviction for criminal mischief should not have been classified as a "crime of violence," that the court should not have awarded him additional criminal history points for related offenses, and that the court erred in determining that he was under a criminal justice sentence at the time of his arrest. We conclude that Damon's first argument has merit, unlike the second and third.

## II. The Standard of Review

■ Questions of law concerning interpretation of the Guidelines are reviewed de novo, and the factual conclusions of the sentencing court, which must be supported by a preponderance of the evidence, are reviewed for clear error. *United States v. Grant,* 114 F.3d 323, 328 (1st Cir.1997).

## III. The "Crime of Violence" Determination

Because it classified Damon's prior conviction for aggravated criminal mischief as a crime of violence, the sentencing court determined that the base offense level was 20 under U.S.S.G. § 2K2.1(a)(4)(A). Had the court not characterized this previous conviction as a crime of violence, the base offense level would have been 14. Counting the two additional offense levels for the obliterated serial number on the pistol, Damon's sentencing range would have been 46 to 57 months instead of 84 to 105 months. More than two years of prison time depends upon whether Damon's prior conviction for aggravated criminal mischief qualifies as a crime of violence under the Guidelines.

The Guidelines, U.S.S.G. § 4B1.2(1), set out a multi-part definition of the term "crime of violence":

> The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—
>
> (i) has an element of the use, attempted use, or threatened use of physical force against the person of another, or
>
> (ii) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

■ Under *Taylor,* whether a predicate offense qualifies as a crime of violence requires a "categorical" examination of the statutory crime. *Taylor* considered whether the defendant's predicate offenses were "burglary" as defined in 18 U.S.C. § 924(e), a sentencing enhancement statute.[3] Taylor

---

**3.** *Taylor* involved the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Under 18 U.S.C. § 924(e)(2)(B), "the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year ... that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." We have noted that authority for interpreting the term

had been convicted of "burglary" in Missouri state courts at a time when Missouri had seven different statutes under which a person could be charged for that crime. The Supreme Court held that, rather than examine the particular circumstances of the crimes for which the defendant was convicted, a sentencing court should look only to whether the statute of conviction contained the elements of a "generic" burglary and should not inquire whether the specific crime committed was especially dangerous to others. *Taylor,* 495 U.S. at 598, 110 S.Ct. at 2158. The Court defined generic burglary as a crime that consists of: "unlawful and unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.*

*Taylor* noted that in some situations the statute of conviction may include elements beyond those of a generic burglary (*e.g.,* entry into places other than buildings). *Id.* at 599–600, 110 S.Ct. at 2158–59. To address that issue, and other problems of interpretation of § 924(e), sentencing courts should employ a "formal categorical approach," and generally "look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602, 110 S.Ct. at 2160. A sentencing court may go beyond the fact of conviction in those cases where the statute encompasses both violent felonies (*e.g.,* generic burglary) and non-violent felonies (*e.g.,* burglary of a vehicle rather than of a building). In such a situation, the sentencing court may examine the indictment or information and jury instructions in order to discern which type of crime the offender was convicted of perpetrating. *Id.* The Court remanded the case so that this determination could be made with respect to Taylor's prior convictions.

After *Taylor,* this court's analysis of predicate offenses has followed this categorical approach. *See United States v. Meader,* 118 F.3d 876, 881–83 (1st Cir.1997) ("[T]he standard approach for determining whether a particular crime fits within the 'crime of violence' rubric is a generic one, in which inqui-

ry is restricted to the statutory definitions of prior offenses, without regard to the particular facts underlying them.") (citations omitted); *United States v. Winter,* 22 F.3d 15, 18 (1st Cir.1994); *United States v. De Jesus,* 984 F.2d 21, 23 (1st Cir.1993) ("[R]ather than examining the actual circumstances underlying the earlier conviction, we examine only the statutory formulation of the crime charged ... to see if that crime is a crime of violence....").

The state statute, defining aggravated criminal mischief under 17–A M.R.S.A. § 805, is the starting point for our inquiry:

1. A person is guilty of aggravated criminal mischief if that person intentionally, knowingly or recklessly:

A. Damages or destroys property of another in an amount exceeding $2,000 in value, having no reasonable ground to believe that the person has a right to do so;

B. Damages or destroys property in an amount exceeding $2,000 in value, to enable any person to collect insurance proceeds for the loss caused;

C. Damages, destroys or tampers with the property of a law enforcement agency, fire department or supplier of gas, electric, steam, water, transportation, sanitation or communication services to the public, having no reasonable ground to believe that the person has a right to do so, and thereby causes a substantial interruption or impairment of service rendered to the public; or

D. Damages, destroys or tampers with property of another and thereby recklessly endangers human life.

This state statute, on its face, covers many types of activities, some actually or potentially violent, depending on the subsection involved, some not. Through its subsections, § 805 is the equivalent of four statutory crimes. The government concedes that 17–A M.R.S.A. § 805(1)(D) involves a serious risk of harm to others but that 17–A M.R.S.A. § 805(1)(A), (B) and (C) do not.

---

"violent felony" as it is defined in the ACCA constitutes authority for interpreting U.S.S.G. § 4B1.2, given the similarity in definitions. *See United States v. Meader,* 118 F.3d 876, 882–83

(1st Cir.1997); *United States v. Winter,* 22 F.3d 15, 18 n. 3 (1st Cir.1994). Cases involving the interpretation of each provision are helpful in deciding this case.

Under such circumstances, *Taylor* instructs that it is appropriate to look to the charging document to see which subsection of the statute is involved. *Taylor*, 495 U.S. at 602, 110 S.Ct. at 2160; *see also Winter*, 22 F.3d at 21 (parsing 18 U.S.C. § 1952(a) into subsections that criminalize primarily violent conduct versus those that criminalize primarily non-violent conduct); *United States v. Doe*, 960 F.2d 221, 224 (1st Cir. 1992) (additional inquiry into indictment and jury instructions authorized by *Taylor* when a statute covers both violent and non-violent conduct "means only that, where a single statutory provision defines several different crimes . . . a court may have to look at the indictment . . . to see which of the several different statutory crimes . . . was at issue").

■ We turn to the crime with which Damon was charged. It is clear that he was not charged under subsection D, which necessarily involves harm to others, but rather under subsection B, which does not. Damon was charged in an information which recited:

> That on or about January 8, 1994, in the town of N. Anson, County of Somerset and State of Maine, Ira Damon III did intentionally, knowingly or recklessly damage or destroy property in an amount exceeding $2,000.00 in value, to wit, his own house, in order to enable himself to collect insurance proceeds for the loss caused.

The inquiry is whether the elements of subsection B fit the definition of a crime of violence under U.S.S.G. § 4B1.2(1). The answer is that they do not, with the possible exception of the "otherwise" clause in U.S.S.G. § 4B1.2(1)(ii). *See De Jesus*, 984 F.2d at 24–25 (larceny from the person falls within the "otherwise" clause because the statute requires theft from the victim's person or immediate vicinity, and thus involves the risk of a violent struggle).

Damon's prior conviction for aggravated criminal mischief qualifies as a crime of violence if and only if a serious potential risk of physical injury to another is a "normal, usual, or customary concomitant" of the predicate offense of aggravated criminal mischief as set forth in § 805(1)(B). *See Winter*, 22 F.3d at 20. In conducting this inquiry, we examine whether the "mine run of conduct," *De Jesus*, 984 F.2d at 24, which subsection B was intended to cover constitutes a crime of violence.

The government vociferously argues that causing damage to a house of $2,000 or more in order to collect insurance proceeds normally involves "a serious potential risk of physical injury to another." We think not. We note that arson, which does pose a great risk to fire department personnel and others, is a separate crime and that simply causing damage to property, including a house, does not require the damage be done by arson. There are many easy ways to cause $2,000 in property[4] damage which do not risk physical injury to other people. Exposing the interior of a house to the elements by opening windows or doors could cause such damage. Leaving a few windows open on a frigid night or, to give a New England example, during a Nor'easter, will readily lead to such damage to a house. Furthermore, it is more typically true that people defrauding insurance companies by damaging property will not want other persons to be present who could give witness to the misdeeds. And so, ironically, the intent to defraud the insurer reduces any potential risk of harm to others.

This contrasts markedly with the risks associated with the typical burglary of a dwelling. Burglary has "an inherent potential for harm to persons. The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." *Taylor*, 495 U.S. at 588, 110 S.Ct. at 2153.

Examining just the statutory language and the charging document,[5] we conclude that the

---

4. "Property" as it is used in the aggravated criminal mischief statute means "anything of value," 17–A M.R.S.A. § 352, thus homes are just one of many forms of property that may be damaged or destroyed by offenders who violate 17–A M.R.S.A. § 805(1)(B).

5. This case does not raise the question of what documents beyond the charging document or the jury instructions may be examined to determine which subsection of the multi-faceted crime is involved. The question about what subsection or type of statutory crime is involved is resolved

typical conduct reachable under subsection B does not involve a serious potential risk of physical injury to another. Our inquiry in reaching this conclusion is limited to the "usual type of conduct that the statute purposes to proscribe," and does not explore "the outer limits of the statutory language or the myriad of possibilities girdled by that language." *Winter,* 22 F.3d at 20. *See also Doe,* 960 F.2d at 224–25 (holding that crime of being a felon in possession of a firearm is not a crime of violence because typical firearm possession is not violent, even though Doe possessed his gun while waiting to ambush an enemy).

The government nonetheless argues that the inquiry should not stop there, *Taylor* notwithstanding. At the government's insistence, and relying on this court's 1992 decision in *United States v. Harris,* 964 F.2d 1234 (1st Cir.1992), the district court engaged in further inquiry. It turned to the PSI and learned that Damon had attempted to "sell his house to the insurance company" (as this activity is commonly described)[6] by burning it. The district court sensibly concluded that this was the equivalent of arson, and that, under explicit mandate of the Guidelines and our precedent, arson is undeniably a crime of violence, not the least of which for the threat it poses to firefighters. *See United States v. Mitchell,* 23 F.3d 1 (1st Cir.1994). Accordingly, the court concluded that the actual aggravated criminal mischief here was a crime of violence and so increased Damon's sentence.

In light of *Taylor* and changing definitions from the Sentencing Commission, we think the district court was precluded from looking so deeply into the nature of the predicate offense. That the court thought it permissible to do so under our decision in *Harris* was not unreasonable, but as we now clarify, was wrong.

In *Harris* and in *United States v. Bregnard,* 951 F.2d 457 (1st Cir.1991), this court held that it was proper for the sentencing court, in determining whether a prior guilty plea was to a crime of violence where the statute typically included both generally violent and non-violent crimes, to examine the description in the offenders' uncontested presentencing reports of the prior indictment and plea. In both *Harris* and *Bregnard,* the defendant had been previously convicted of assault and battery. Because the state crime of assault and battery, Mass. Gen. Laws ch. 265 § 13A, encompassed both violent and non-violent conduct, this court said that it was proper for the sentencing court to determine of which variety of the offense the defendant had been convicted, and to look to the uncontested portions of the presentencing report to do so. *Harris* at 1236; *Bregnard* at 459–60.

We noted in *Harris* that *Taylor* establishes that "sometimes, looking to the 'statutory definition' alone will not establish whether or not the prior offense was a 'violent felony,' for some statutes contain language in a single section that covers several separate crimes, some of which are 'violent' and some of which are not." *Harris,* 964 F.2d at 1235.

*Harris* stated that the proper inquiry under the categorical approach does not concern what the defendant actually did, but rather examines whether the defendant was convicted of a "generically violent crime" or a "generically non-violent crime." *Id.* at 1236. *Harris* held that when a trial court is faced with a past conviction for violating a single statute that covers both a violent and a non-violent crime it may decide which crime was involved by looking to an uncontested presentencing report. The *Harris* court noted the availability of other sources of information, such as the indictment or guilty plea, to make this determination. *Id.* at 1236 ("A sentencing court, faced with a prior conviction under a statute that makes it unlawful to break into a 'building' or into a 'vehicle,' might simply read the indictment or the guilty plea ... to see if it says 'building' or 'vehicle.' ").

---

here by the charging document. The parties' vigorous argument about whether a PSI may ever be a source of information is simply not germane.

**6.** In some parts of the country, but not New England, the phrase is colorfully put as "sell his house to the Yankees."

Later cases have clarified that a sentencing court faced with a prior conviction under a broad statute should first resort to the jury instructions or charging instrument, and only if these are not instructive may the court turn to other documents for information. *See Meader*, 118 F.3d at 883 (noting that Application Note 2 for § 4B1.2 "explicitly identifies the defendant's charged conduct . . . as the focus of the 'otherwise' clause"); *Winter*, 22 F.3d at 20 & n. 8 ("*Taylor* demands that a court . . . consult a limited array of materials—principally the indictment and jury instructions—in determining if the offense can be classified as a crime of violence."). In these later cases, the courts were persuaded that amendments to the Guidelines which emphasized the defendant's charged conduct mandated that inquiry should begin with the charging instrument.[7] *See United States v. Palmer*, 68 F.3d 52 (2d Cir.1995) (collecting cases); *United States v. Fernandez*, 940 F.Supp. 387, 391–92 (D.Mass. 1996), *aff'd*, 121 F.3d 777 (1st Cir.1997). Also, *Taylor* specifically refers to the charging instrument and jury instructions as acceptable sources of information under the categorical approach. *Taylor*, 495 U.S. at 602, 110 S.Ct. at 2160.

Under *Taylor*, when the predicate statutory crime has been determined to be typically non-violent, the inquiry ends. In this case, the charging document makes it clear that Damon was convicted under 17–A M.R.S.A. § 805(1)(B) and we find that the typical run of conduct for this property damage crime does not constitute a crime of violence. It was error to look beyond.

Our society has decided to enhance the punishment for those who have a history of crimes of violence, and it may appear a strange system which reverses a sentencing judge for determining whether the defendant's past criminal actions were in fact violent. Such a result is compelled by *Taylor*[8] and by the Guidelines. We pause to explain some of the reasons, as we understand them, which motivated the choice to prefer the categorical approach.

The first reason, as *Taylor* observed, is that Congress intended that the Guidelines take a categorical approach to sentencing. The language of § 4B1.2, like the almost identical provisions of § 924(e), requires that the sentencing court should "look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Taylor*, 495 U.S. at 600, 110 S.Ct. at 2159. Such categorical sentencing procedures for implementation of the Guidelines, it is hoped, will lead to like cases receiving like sentences. *See Doe*, 960 F.2d at 225 ("uniform interpretation of similar language is itself desirable"); *United States v. Gonzalez–Lopez*, 911 F.2d 542, 547 (11th Cir.1990) (citation omitted) ("The guidelines . . . constitute an effort by the Commission to design a sentencing system that reduces disparities in the sentences of defendants convicted of similar crimes. Taking into account the myriad of subtle differences in the commission of every recognized crime of violence would result in as many different sentences.").

Second, using a categorical approach makes more sense administratively than conducting a fact-intensive inquiry. The categorical approach usually requires the sentencing court to look only to a few readily available sources of undisputed information. The sentencing court is thus spared from mini-trials on prior offenses, which have already been once adjudicated, when deciding the appropriate punishment. *See Taylor*,

---

**7.** Application note two to § 4B1.2 now reads: "Other offenses are included [as crimes of violence] where . . . the conduct set forth (*i.e., expressly charged*) in the count of which the defendant was convicted . . . by its nature, presented a serious potential risk of physical injury to another. Under this section, *the conduct of which the defendant was convicted* is the focus of inquiry." (emphasis added). We must accord the application notes and commentary controlling weight if they are not clearly erroneous nor inconsistent with the Guidelines. *Stinson v. United States*, 508 U.S. 36, 45, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993).

**8.** We note that a petition for certiorari is pending in *United States v. Shannon*, 110 F.3d 382 (7th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 223, —— L.Ed.2d —— (1997), a case which also concerns the proper application of the categorical approach. Even if certiorari is granted, however, the Supreme Court's resolution of *Shannon*

495 U.S. at 601, 110 S.Ct. at 2159–60 (noting "practical difficulties" of fact-intensive inquiry). As we said in *United States v. Correa*, 114 F.3d 314, 318 (1st Cir.1997), "[c]riminal history, by definition, deals with bygone events which often happened in the distant past, or in a remote jurisdiction, or both. Requiring a federal judge to go behind the formal record and excavate the details of what transpired in each instance would impose an onerous burden, freighted with unusual evidentiary difficulties." Such an inquiry, as *Taylor* recognized, would be time-consuming and could be unfair.

Third, this approach honors the choice of the state in its decisions concerning which crimes to prosecute and how plea bargains should be negotiated. It respects the autonomy of the state system. To give an example, the state here did not charge Damon with arson, clearly a crime of violence. It charged him with aggravated criminal mischief. To the extent that enhancement provisions are "intended to supplement the States' law enforcement efforts against 'career' criminals," *Taylor*, 495 U.S. at 581, 110 S.Ct. at 2149, it is more fundamentally fair to act in ways "consistent with the prerogatives of the States in defining their own offenses." *Id.* at 582, 110 S.Ct. at 2150 (quoting from the Senate Report for the Armed Career Criminal Act of 1982).

Fourth, the categorical approach is more or less evenhanded in its imperfections. In this case and in *Doe*, the categorical approach has resulted in a less severe sentence than would result were sentencing court permitted to examine the actual circumstances of the predicate offense. In other cases, however, the sentence could be harsher than if the actual conduct could be examined. For example, in *United States v. Fernandez*, 121 F.3d 777 (1st Cir.1997) this court held that the Massachusetts crime of assault and battery on a police officer is, categorically, a

crime of violence. Despite the fact that the crime could theoretically include both violent and non-violent variants, the usual case was violent. *Id.* 121 F.3d at 779–80. Thus a defendant who actually did commit the offense in a non-violent manner would be subjected to a harsher sentence.[9]

Finally, we are dealing with sentencing *enhancements*. Defendants have already been punished once for their earlier offenses. Those who do not receive enhancements they might if the court were allowed to examine the actual conduct underlying the predicate offense have not escaped punishment for these prior bad acts.

The choice of a categorical procedure for the evaluation of predicate offenses could easily be made differently. But arguments in favor of a different process are better addressed elsewhere. We are bound by *Taylor* and the Guidelines.

IV. The Criminal History Calculation

Damon argues that the sentencing court improperly tallied criminal history points for related offenses and that he was not under a criminal justice sentence at the time of the instant offense. These arguments are without merit.

■ Damon claims that his two prior state law convictions for aggravated criminal mischief and criminal threatening were "related" within the meaning of U.S.S.G. and so must be treated as a single sentence under U.S.S.G. § 4A1.2(a)(2).[10] The crimes were related, he says, because sentencing occurred on the same day in the same court for both offenses. It is clear that the offenses are unrelated. The aggravated criminal mischief offense occurred on January 8, 1994, and the criminal threatening offense on January 5, 1995. One involved Damon damaging his own house, while in the other Damon threatened another man with a .45 caliber handgun.

would not necessarily affect the outcome of this case.

9. The *Fernandez* court did note, however, that in this situation the defendant would be free to seek relief by filing a departure motion. *Id.* 121 F.3d at 780.

10. Section 4A1.2, comment n.3 provides:

[P]rior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.... [When this does] not adequately reflect the seriousness of the defendant's criminal history or the frequency with which he has committed crimes ... an upward departure may be warranted.

Damon's argument that these crimes are related fails under *United States v. Correa*, 114 F.3d 314, 317 (1st Cir.1997), where this court expressly held that:

> at least in respect to offenses that are temporally and factually distinct (that is, offenses which occurred on different dates and which did not arise out of the same course of conduct), charges based thereon should not be regarded as having been consolidated (and, therefore, "related") unless the original sentencing court entered an actual order of consolidation or there is some other persuasive indicium of formal consolidation apparent on the face of the record which is sufficient to indicate that the offenses have some relationship to one another beyond the sheer fortuity that sentence was imposed by the same judge at the same time.

There was no formal order of consolidation of these two offenses, and we conclude that they are unrelated for sentencing purposes.

 Damon also argues that the district court should not have assessed two criminal history points for his conviction for operating a motor vehicle as an habitual offender. He claims that this conviction is related to the instant offense, as he was stopped with the guns in his car. The mere fortuity that one offense led to the discovery of a second crime is not sufficient to make the offenses "related" within the meaning of the Guidelines. *See United States v. Troncoso*, 23 F.3d 612, 616 (1st Cir.1994) (drug selling charges unrelated to violation of federal immigration laws, even though former led to discovery ·of latter), *cert. denied*, 513 U.S. 1116, 115 S.Ct. 912, 130 L.Ed.2d 793 (1995); *United States v. Beddow*, 957 F.2d 1330, 1338–39 (6th Cir. 1992) (conviction for carrying a concealed weapon not part of federal money laundering offense, even though gun was found at time of arrest for money laundering); *United States v. Banashefski*, 928 F.2d 349, 353 (10th Cir.1991) (state conviction for possession of a stolen car severable from federal offense of being a felon in possession, even though firearm was found in car's trunk at time of arrest on stolen vehicle charge).

 Damon next argues that he was not under a "criminal justice sentence" at the time he committed the instant offense, February 28, 1996, because while the Maine Superior Court imposed a sentence for his aggravated criminal mischief and criminal threatening offenses on February 22, 1996, the court stayed execution of these sentences until March 21, 1996.

There is no question that Damon was required to surrender to prison to serve his sentence at the time he was found with firearms in his possession. The application note for § 4A1.1(d) specifically states that "active supervision is not required for this item to apply." Because Damon was under a requirement to serve this sentence at the time of the instant offense, we hold that he was under a criminal justice sentence. *See United States v. Martinez*, 931 F.2d 851, 852 (11th Cir.1991) ("[A] defendant who has been sentenced, regardless of whether he has surrendered for service of that sentence, must be considered 'under [a] criminal justice sentence' within section 4A1.1(d).")

Damon's offenses of negotiating worthless instruments occurred over a period of eight days in October of 1989. Damon was sentenced for these three offenses on January 3, 1990, on May 14, 1990, and on June 11, 1991. Sentencing for the latter two crimes occurred in a different court than for the first offense. Different sentences were imposed for each offense. We find none of the factors necessary to implicate a common scheme or plan present in the record of this case. *See United States v. Correa*, 114 F.3d 314, 317 (1st Cir.1997); *United States v. Patasnik*, 89 F.3d 63, 74 (2nd Cir.1996); *United States v. Letterlough*, 63 F.3d 332, 336 (4th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 406, 133 L.Ed.2d 324 (1995); *United States v. Yeo*, 936 F.2d 628, 629 (1st Cir.1991).

## V. Conclusion

 Under the categorical approach, sentencing courts must determine, first, which statutory offense the defendant was convicted of committing and, second, whether this type of offense is usually violent. When the statute of conviction for a predicate offense is broad enough to cover both generic violent crimes and generic non-violent

crimes, the sentencing court may examine the charging instrument and/or jury instructions to determine whether it was the violent or non-violent type of crime for which the defendant was convicted. Only if these sources do not yield this information may the sentencing court look to other accurate, judicially noticeable sources. At each stage, the purpose of the inquiry is to determine whether the *type* of crime the defendant committed was violent or non-violent. In this case, based on the charging papers, we hold that Damon violated 17–A M.R.S.A. § 805(1)(B), and that the typical offense punishable under this statute is not a crime of violence.

The violent crime enhancement to Damon's sentence is vacated and the case is remanded to the district court for resentencing in accordance with this opinion.

HILL, Senior Circuit Judge, concurring.

I concur in the judgment and in all of the opinion of Judge Lynch except that portion commencing on page 15, remarking upon the fact that the law forbids a sentencing judge from ascertaining the existence, vel non, of pertinent facts and shouldering the burden "to explain why."

The reason for my concurrence is that *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) and decisions of this court, interpreting *Taylor,* upon which the opinion relies, require this result. Being bound, I do not dissent from our requiring a sentencing judge "to ignore the reality of the prior offense in determining whether that offense is a crime of violence." We import instructions—"Don't ask. Don't tell."