**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 06-4772**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOHN A. DYER,

Defendant - Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Rebecca Beach Smith, District Judge.  (2:05-cr-00069-RBS)

---

Submitted:  March 21, 2007                    Decided:  May 23, 2007

---

Before WILKINSON, MOTZ, and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Michael S. Nachmanoff, Acting Federal Public Defender, Keith Loren Kimball, Assistant Federal Public Defender, Norfolk, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Stephen W. Haynie, Assistant United States Attorney, Norfolk, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

John A. Dyer appeals the sixty-three-month sentence he received after he pled guilty to conspiracy to present false claims, 18 U.S.C. § 286 (2000) (Count 1), making false claims, 18 U.S.C. § 287 (2000) (Counts 2-9), embezzlement of public money, 18 U.S.C.A. § 641 (West Supp. 2006) (Count 10), conspiracy, 18 U.S.C. § 371 (2000) (Count 11), and acceptance of a gratuity by a public official, 18 U.S.C. § 201 (2000) (Count 12). Dyer contends that the district court clearly erred in making an adjustment for obstruction of justice, U.S. Sentencing Guidelines Manual § 3C1.1 (2005), and in denying him an adjustment for acceptance of responsibility, USSG § 3E1.1, and further maintains that his sentence is unreasonable because the court's errors resulted in an incorrectly calculated guideline range. We affirm.

While Dyer was working as a Combat Directions Systems Activity (CDSA) program manager with the Naval Sea Systems Command in Dam Neck, Virginia, he conspired with Scott Carleton, another CDSA employee, to create SD-184, a fictitious project. His wife, Amy Dyer, was hired by Star Digital, a staffing agency for government contracts, to work on the project. At the time, Amy Dyer was employed full time with the Chesapeake public schools. From March 2000 through the end of the year, Amy Dyer was paid $81,373.89 for work on several language translation programs, work

- 2 -

she did not perform.  John and Amy Dyer were charged in Counts 1 through 10 with conspiracy, making false claims, and embezzlement.[1]

During the same period, Dyer began an affair with Gina McCoy, a graphic arts student who operated a business from her home.  Dyer helped McCoy obtain work as a subcontractor for Global Technical Systems (GTS), a Virginia Beach company that provided services to CDSA and ACS Systems & Engineering (ACS), a similar company.  Dyer told McCoy to inflate her invoices, and provided her with a laptop computer which was designated for use on other government projects.  Dyer demanded and received from McCoy over $10,000 of the money she received.  Dyer was charged in Counts 11 and 12 with conspiracy and with seeking and receiving a gratuity for official acts.[2]

At Dyer's guilty plea hearing, after the government presented its statement of facts supporting the guilty plea, the government attorney informed the court that Dyer agreed with the facts stated, with certain exceptions.  These were: that Dyer was an engineer, not a program manager; that Dyer's supervisor, James Whiddon, originally suggested hiring Dyer's wife; that Amy Dyer was

---

[1]Amy Dyer went to trial in April 2006.  She testified that she had been duped by her husband into believing that she had been hired part-time to review lesson plans for remedial English courses for soldiers.  The jury was unable to reach a verdict, and the government moved to dismiss the charges against her.

[2]McCoy pled guilty to willfully giving a gratuity to a public official, 18 U.S.C. § 201(c)(1)(A) (2000).

initially hired for a legitimate project and was unaware that Dyer and Carleton subsequently extended the project from September to December 2000 and increased the number of hours she billed; that Amy Dyer was not part of the conspiracy between Dyer and Carleton; that Dyer destroyed and/or doctored the time sheets Amy Dyer gave him to send to Star Digital by forging her signature to new time sheets or having her sign blank time sheets and filling them in later; that Amy Dyer performed the legitimate work for which she billed; that her work was given to Carleton; that Dyer saw copies of her work on Carleton's desk; and that Carleton directed the funding of SD-184 with Dyer's knowledge.

Although the probation officer recommended that Dyer had earned an adjustment for acceptance of responsibility, the government objected, asserting that Dyer should receive an adjustment for obstruction of justice because he made false statements in the statement of facts during the guilty plea hearing and should not be awarded an adjustment for acceptance of responsibility.

At the sentencing hearing, the government presented testimony from the lead investigative agent, who said that Whiddon testified at Amy Dyer's trial that he did not suggest that she be hired, and was unaware she was working on SD-184 until near the end of the conspiracy. Whiddon was not familiar with the language training programs that were the subject of SD-184: the Military

- 4 -

Language Trainer (MILT), the Global Language Authoring System (GLAS), and the Maximum Efficiency Language Trainer (MELT). However, the agent testified that Dyer had learned about the programs when he was temporarily assigned to the Office of Special Technology in Washington, D.C. The agent also said that an Army Special Forces language expert testified at Amy Dyer's trial that the language programs she had supposedly been evaluating had already been evaluated and rejected as unusable by the Army, and that Amy Dyer would not have been competent to work on the project, had it still existed, without knowledge of a language such as Arabic or Chinese. The agent further testified that, although Dyer was an engineer, he worked as a program manager at Dam Neck, with the authority to monitor projects and task orders and to allocate funds to task orders or contracts. He described the evidence at Amy Dyer's trial which established that all the funding for SD-184 was ordered by Dyer.

The district court determined that, in his additions to the statement of facts at the Rule 11 hearing, Dyer made four statements that were "patently false," were material to his prosecution and sentencing, and were "a willful attempt to obstruct justice." Having presided over Amy Dyer's trial, the court found that James Whiddon was a credible witness, and that Dyer's statement that Whiddon suggested hiring Amy Dyer was false. The court found that SD-184 was never a legitimate project, as Dyer

said it was, and that Dyer, not Carleton, directed funding for SD-184. Finally, the court found false Dyer's statement that Amy Dyer was not part of the conspiracy. The court decided that Dyer's false statements were material to his sentencing because, if believed, they would have influenced the sentencing court's assessment of the nature and circumstances of the offense and the need to promote respect for the law. The court determined that Dyer had obstructed justice and added a two-level adjustment under § 3C1.1. The court then found that Dyer had not accepted responsibility and that his case was not an extraordinary one in which the defendant could receive an adjustment for both obstruction of justice and acceptance of responsibility. See USSG § 3E1.1, comment. (n.4). The court calculated Dyer's offense level as 24. Because he was in criminal history category I, his advisory guideline range was 63-78 months. The court imposed a sentence of 63 months imprisonment on Counts 1 and 10, 60 months (the statutory maximum) on Counts 2-9 and 11, and 24 months (the statutory maximum) on Count 12. Dyer was also ordered to pay restitution of $81,373.89.

We first conclude that the district court did not err in deciding that Dyer obstructed justice during his prosecution. An adjustment for obstruction of justice may be made if the government shows by a preponderance of the evidence that the defendant "willfully obstructed or impeded, or attempted to obstruct or

impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction . . . ." USSG § 3C1.1. Application Note 4(f) states that providing materially false information to a judge constitutes obstruction of justice. "Material" information is defined in Application Note 6 as that which, "if believed, would tend to influence or affect the issue under determination." However, "[t]he threshold for materiality is conspicuously low." United States v. Gormley, 201 F.3d 290, 294 (4th Cir. 2000) (citation and internal quotation omitted). The district court's factual findings in connection with the adjustment are reviewed for clear error, and its legal determinations are reviewed de novo. United States v. Sun, 278 F.3d 302, 313 (4th Cir. 2002).

Dyer contends as he did in the district court that, even if the statements he added to the statement of facts were false, they were not material to the court's acceptance of his guilty plea, which was the only relevant "issue under determination." We disagree. Dyer's false statements were material to his sentencing because they minimized both the scope of the conspiracy charged in Count 1 and Dyer's role in it.[3] The district court stated that, if

---

[3]Moreover, as the government observed at sentencing, if believed, Dyer's statements exonerated Amy Dyer of any complicity in the conspiracy and could be viewed as an attempt by Dyer to affect his wife's prosecution. Section 3C1.1 provides that obstructive conduct may apply either to the defendant's offense of conviction or to a closely-related offense. United States v. Jones, 308 F.3d 425, 428 (4th Cir. 2002).

believed, Dyer's statements would have affected not only the guideline calculation, which included a leadership role adjustment, but the court's determination of the sentence in light of the 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2006) factors. Therefore, the district court did not err in concluding that § 3C1.1 applied.

A defendant who receives an adjustment for obstruction of justice generally may not receive an adjustment for acceptance of responsibility, but in an extraordinary case, both adjustments may apply. USSG § 3E1.1, comment. (n.4). The defendant has the burden of showing that his circumstances are extraordinary. United States v. Hudson, 272 F.3d 260, 263 (4th Cir. 2001).

Dyer asserts that the district court clearly erred in denying him the adjustment because the court erred in finding that he had obstructed justice, and argues that he showed his acceptance of responsibility by pleading guilty to all twelve counts, expressing remorse, and taking full responsibility for his offenses. We are satisfied that the court did not clearly err in finding that Dyer's case was not an extraordinary one where both adjustments may be applied because Dyer attempted to minimize the offense and his role in it at the same time that he was pleading guilty, and continued this stance through the sentencing hearing.

Finally, Dyer contends that his sentence is unreasonable because the district court erroneously determined his guideline range. As discussed above, the court did not err in this respect.

The sentence is within a correctly calculated guideline range and is thus presumptively reasonable.  <u>United States v. Green</u>, 436 F.3d 449, 456-57 (4th Cir.), <u>cert. denied</u>, 126 S. Ct. 2309 (2006).  Dyer has not presented any other information to rebut the presumption.

We therefore affirm the sentence imposed by the district court.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>